UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE:<br><br>ZINA CHRISTIAN CENTER, INC.,<br><br>    Debtor. | Case No. 11-08675-8-SWH<br>Chapter 11 |

## OBJECTION TO DEBTOR'S MOTION TO USE CASH COLLATERAL OF FOUNDATION CAPITAL RESOURCES, INC.

Foundation Capital Resources, Inc. objects to the Debtor's Motion to Use Cash Collateral (the "Debtor's Motion") for the reasons set forth below:

### BACKGROUND

1.  Foundation Capital Resources, Inc. ("FCR") is a Georgia corporation.

2.  Debtor Zina Christian Center, Inc. ("Debtor") filed a voluntary Chapter 11 petition on November 14, 2011 (the "Petition Date"). No trustee has been appointed and Debtor is operating as a debtor-in-possession.

3.  On or about April 15, 2008, FCR made a mortgage loan in the original principal amount of $1,555,000.00 (the "Loan") to Zina Christian Center, Inc. ("Debtor") and Able Human Services, Inc. (along with the Debtor, collectively, the "Borrowers").

4.  The Loan is evidenced by the following instruments and documents: (i) a Adjustable Rate Secured Note, dated April 15, 2008, in the original principal amount of $1,555,000.00 (the "Note") executed by the Borrowers, a true and accurate copy is attached as Exhibit A; (ii) an Agreement Regarding Interest and Charges, dated April 15, 2008, executed by the Borrowers (the "Agreement"), a true and accurate copy is attached as Exhibit B; (iii) a first-

priority Deed of Trust, Assignment of Leases and Rents, dated April 15, 2008, and recorded in Book 13054, Page 1320, in the Register of Deeds Office for Wake County, North Carolina, encumbering certain real property located at 3640 Bastion Lane, Raleigh, North Carolina, 27604 and the improvements thereon commonly known as the Ezra Center (the "Deed of Trust"), a true and accurate copy is attached as <u>Exhibit C</u>; (iv) a Uniform Commercial Code Financing Statement recorded on April 16, 2008 in book 13053, Page 1856, in the Register of Deeds Office for Wake County, North Carolina (the "County UCC"), a true and accurate copy is attached as <u>Exhibit D</u>; (v) a Uniform Commercial Code Financing Statement filed on April 17, 2008 as File Number 20080035731M in the Office of the Secretary of State of North Carolina (the "State UCC"), a true and accurate copy is attached as <u>Exhibit E</u>; (vi) an Indemnity, dated April 15, 2008, executed by the Borrowers (the "Indemnity"), a true and accurate copy is attached as <u>Exhibit F</u>; and (vii) a Forbearance and Settlement Agreement effective as of September 21, 2009, executed by the Borrowers and FCR, as superceeded and replaced by a Forbearance and Settlement Agreement effective as of August 1, 2010, executed by the Borrowers and FCR, as amended by a First Addendum to Forbearance and Settlement Agreement effective as of September 27, 2010, executed by the Borrowers and FCR (collectively, the "Forbearance Agreement"), a true and accurate copy is attached as <u>Exhibit G</u>. The Note, the Agreement, the Deed of Trust, the County UCC, the State UCC, the Indemnity, and the Forbearance Agreement are collectively referred to as the "Loan Documents."

5. The Note required two hundred thirty-nine (239) consecutive monthly payments of principal and interest in the initial amount of $12,511.88, each to be made to FCR beginning on June 1, 2008 and a final payment on May 1, 2028 equal to the unpaid balance of principal plus accrued and unpaid interest and any other amounts owed. The Note provides for an initial

contract interest rate of 9% per annum with the first interest rate change date on May 1, 2011 and subsequent interest rate change dates each thirty-six (36) months thereafter, and monthly payments of principal and interest were to be recalculated at each interest change date. The Note further provides for a contract interest rate floor of 9%.

6. Borrowers have a history of making payments late and skipping payments. Due to said history FCR and Borrowers entered into the Forbearance Agreement. The Forbearance Agreement required payments of (a) $10,000.00 each for the months of September, October, November, and December 2010, (b) $12,500.00 each for the months of January, February, March, April, May and June, 2011, and (c) an amount to be calculated sufficient to amortize the principal balance plus the arrearage caused by the reduced payment schedule over a new thirty (30) year amortization schedule, with such new payment to commence on July 1, 2011. The Forbearance Agreement provides for an interest rate of 10% per annum.

7. Borrowers ceased making payments of $10,000 as required by the Forbearance Agreement beginning with missing the December 1, 2010 payment. During the calendar year 2011, the Borrowers made five payments of $10,000 and one payment of $12,500; none of these payments were made in conformity with the terms of the Forbearance Agreement.

8. As a result of the defaults under the Loan Documents, FCR, as the holder of the Note, previously demanded payment in full of all principal, interest and late fees due under the Note.

9. Due to the ongoing defaults under the Loan Documents, the Bank substituted a substitute trustee under the Deed of Trust and requested that the substitute trustee institute a power of sale foreclosure proceeding under the Deed of Trust. A foreclosure sale was held for

the Ezra Center on November 3, 2011. FCR was the high bidder, having bid the amount of $1,758,311.90. A copy of the filed Report of Foreclosure Sale is attached as <u>Exhibit H</u>.

10. The Debtor filed its Chapter 11 petition on the last day of the upset bid period for the foreclosure sale.

11. As of the November 3, 2011, FCR was owed under the Note unpaid principal amount of $1,525,140.23, late charges of $7,564.32, and accrued and unpaid interest of $217,107.99 (calculated at the original contract rate of 9%). Interest is accruing at a rate of $376.06 per diem (calculated at the original contract rate of 9%). On January 13, 2012, Borrowers made a payment of $6,000.00 to FCR. Except to the extent of the January 13, 2012 payment of $6,000.00, all of the foregoing amounts remain due and unpaid on the Note.

12. The foregoing amounts do not include costs advanced by FCR or FCR's attorney's fees and expenses related to the foreclosure and this bankruptcy proceeding.

## OBJECTIONS TO DEBTOR'S MOTION

13. Pursuant to the Deed of Trust, "All Rents now existing or hereafter created and affecting all or any portion of the [Ezra Center] or the use or occupancy thereof . . ." were assigned to FCR. <u>See</u> Exhibit C, ¶5.1, et. seq.

14. The Deed of Trust granted the Borrowers a license to collect and apply to its own account all rents, issues, and profits from the Ezra Center as they became due only so long as an Event of Default shall not have occurred and be continuing. FCR notified the Borrowers of the Event of Default under the Deed of Trust prior to the Petition Date.

15. Pursuant to the Deed of Trust, "All income (including, but not limited to, all revenues, pledges, income, gifts, donations and offerings from whatever source owned by

Debtor) . . ." were pledged to FCR as a secured interest. See Exhibit C, ¶1.12 and See Exhibit B, ¶(c) of Exhibit C.

16. The rental income from the Ezra Center and all income of the Debtor, including gifts, titles donations and offerings, constitutes "cash collateral" of FCR under the Bankruptcy Code and, for the reasons set forth below, FCR is not adequately protected and does not consent to the Debtor's use of its cash collateral as requested in Debtor's Motion.

17. Paragraph 7 of the Debtor's Motion proposes adequate protection payments of $5,000.00 per month. This proposal is not supported with any assertion or statement of how the sum of $5,000.00 per month was determined as an appropriate adequate protection payment. Further, Debtor's Motion did not include a detailed budget of expenses. The Debtor's Motion contains only a summary statement that "The average, non-mortgage expenses for the debtor during [the three months preceding the filing of bankruptcy] totaled $26,277.24." Debtor has subsequently provided a budget; however the information contained in the budget is inconsistent with what is set forth in Debtor's Motion.

18. Debtor's Application for Approval of Compensation of Corporate Officers ("Debtor's Application") requests approximately $9,617.00 per month in compensation and benefits for Waymond L. Burton, Jr., President and Senior Pastor, and approximately $1,187.00 per month in compensation and benefits for Jacquelyn M. Burton, Vice-President, Secretary/Treasurer, and Co-Pastor. Payments to officers will be taken from FCR's cash collateral. Furthermore, the requested payments set forth in Debtor's Application were not supported with any budget of revenues and expenses. The subsequently identified budget provided by Debtor indicates that wages and salaries are to be paid in the amount of $13,000, with no breakdown as to how or to whom such payments are to be made.

19.    Debtor's Small Business Monthly Operating Report for the stated period of November, 2011 through November 30, 2011 ("November Report") and filed with the Court on December 22, 2011 includes the following:

    a.    Revenue totaling $25,451.73 from sources **<u>other than rental income</u>**;

    b.    Expenditures totaling $18,204.03.

A number of the expense line items appear to be excessive and/or potentially reflect payments unnecessary for the ordinary operating expenses for the Ezra Center. For example, the November Report includes a total of $3,304.26 for "gift", "donations", and "needy families & beneveln" [sic]. Additional information, including the identity of the recipients of such payments and the reason for such payments is needed to evaluate these items (as well as the other expense line items included in the proposed budget).

20.    In addition, the November Report reflects a payment of $1,578.50 to "service-sub-contractor" with no detail provided as to the type of service provided or the identity of the service provided.

21.    In addition, the November Report identifies an expense of $1,325 for "Rent/Church". No such rent expense was approved in the Court's Order Authorizing Assumption of Executory Contract entered on December 13, 2011. Additional information, including the identity of the recipient and purpose of the rental is needed to evaluate this expense.

22.    The November Report omits the following information:

    a.    On the revenue side, no rental payments are identified as having been received from any of the five leases under which the Debtor is the lessor and which leases

6

were approved in the Court's Order Authorizing Assumption of Executory Contract entered on December 13, 2011;

      b.    On the expenditure side, no payments for typical building operational expenses such as utility payments, building insurance premiums, and janitorial services are noted.

The November Report states that the "cash profit" for the month was $7,247.70.

23.    FCR objects to the use of its cash collateral to pay any expenses that are not "ordinary course" expenses for the operation of the Ezra Center.

24.    The Debtor's Motion does not propose any form of reporting, including but not limited to "actual-to-budget" reporting, to allow FCR and the Bankruptcy Administrator to monitor the cash receipts and expenses related to the Ezra Center.

WHEREFORE, for the foregoing reasons, FCR Bank requests that the Debtor be prohibited from using FCR Bank's cash collateral and grant such further relief as the Court deems appropriate.

This 16th day of January 2012.

                                          By: /s/ Marc C. Tucker
                                          Marc C. Tucker
                                          N.C State Bar No. 25722
                                          SMITH MOORE LEATHERWOOD LLP
                                          P.O. Box 27525
                                          Raleigh, NC 27611
                                          Telephone:   (919) 755-8700
                                          Facsimile:    (919) 755-8800
                                          Email: marc.tucker@smithmoorelaw.com
                                          *Attorney for FCR Bank*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing **OBJECTION TO MOTION TO USE CASH COLLATERAL** was duly served upon the parties listed below via the electronic filing system or by first class mail, postage prepaid, and upon those parties having made an appearance in this case via the electronic filing system:

**Travis Sasser**
Sasser Law Firm
2000 Regency Parkway
Suite 230
Cary, NC 27518

**U.S. Bankruptcy Administrator**
Attn: Parker M. Worth
434 Fayetteville Street
Suite 620
Raleigh, NC 27601

**Zina Christian Center**
Post Office Box 25613
Raleigh, NC 27604

This the 16th day of January 2012.

s/ Marc C. Tucker
Marc C. Tucker
*Attorney for FCR*