## EXHIBIT A

[Copy of Note to follow]

# ADJUSTABLE RATE SECURED NOTE

$1,555,000.00                                                        April 15, 2008
Loan No.                                              Wake County, North Carolina

FOR VALUE RECEIVED, ZINA CHRISTIAN CENTER, INC., a North Carolina nonprofit corporation, 3640 Bastion Lane, Raleigh, North Carolina 27604, and ABLE HUMAN SERVICES, INC., a North Carolina nonprofit corporation, whose address is 3640 Bastion Lane, Raleigh, North Carolina 27604 (collectively referred to as "Borrower"), promises to pay in legal tender of the United States to the order of FOUNDATION CAPITAL RESOURCES, INC., a Georgia corporation, and its successors and assigns (collectively, the "Lender"), at the address of 1661 North Boonville Avenue, Springfield, Missouri 65803, or at such other place as the Lender may designate in writing, the principal sum of ONE MILLION FIVE HUNDRED FIFTY-FIVE THOUSAND AND 00/100 DOLLARS ($1,555,000.00), or so much thereof as may be advanced from time to time, together with interest as hereinafter provided (the "Interest Rate") on the unpaid principal balance from the date hereof, to be paid as set forth herein.

Interest will be charged on unpaid principal until the full amount of principal has been paid. Borrower will pay interest at an initial rate of nine percent (9%) per annum. The interest rate Borrower will pay will change in accordance with the terms of this Note as set forth herein below. Interest shall be computed hereunder with respect to each day during the term of this Note by multiplying the outstanding principal balance due hereunder on that day by a daily interest factor, which daily interest factor shall be calculated (on the basis of a year of 365 days) by dividing the aforesaid per annum interest rate by 365. Interest so computed shall accrue for each and every day on which any indebtedness remains outstanding hereunder, including the day on which funds are initially advanced regardless of the time of day such advance is made, and including the day on which funds are repaid unless repayment in federal funds immediately available in the city in which Lender or its agent servicing this loan are located, is received by Lender prior to 11:00 a.m., local time in such city.

Borrower will make two hundred thirty-nine (239) monthly payments of principal and interest, based on a loan amortization of thirty (30) years, on the 1st day of each month beginning on June 1, 2008, and will make a final payment of all outstanding principal and accrued outstanding interest, together with accrued and unpaid late fees, and other charges on the Maturity Date, as said item is hereinafter defined. Borrower will make said payments every month until Borrower has paid all of the principal and interest and any other charges described below that Borrower may owe under this Note. Borrower's monthly payments will be applied first to late fees and other charges, then to interest, and finally to principal. If on May 1, 2028, Borrower still owes amounts under this Note, Borrower will pay those amounts in full on that date, which is called the 'Maturity Date.'

Each of Borrower's initial monthly payments will be in the amount of TWELVE THOUSAND FIVE HUNDRED ELEVEN AND 88/100 DOLLARS ($12,511.88) based on said thirty (30) year amortization.

The interest rate Borrower will pay may change on May 1, 2011, and on that day every thirty-six (36) months thereafter. Each date on which Borrower's interest rate could change is called a "Change Date." Beginning with the first Change Date, Borrower's interest rate will be reset at a rate equal to the then prevailing interest rate charged by the Noteholder on similar loans as established by Noteholder's internal rate committee effective at the Change Date. This rate will be Borrower's new interest rate until the next Change Date. The Lender will then determine the amount of the monthly payment based on the remaining term of the original amortization period at Borrower's new interest

rate. The result of this calculation will be the new amount of Borrower's monthly payment.   The Lender will give Borrower notice of this change.

Except as herein provided, under no circumstances and at no time will the interest rate on this Note be less than nine percent (9%) per annum except as may otherwise be agreed to in writing. Under no circumstances and at no time will the interest rate on this Note be more than the maximum rate allowed by Law.

Lender and Borrower agree that the Note may be prepaid in whole or in part, without penalty, provided that the prepayment is not made with funds borrowed by or for the benefit of Borrower or an affiliated or related entity of the Borrower ('Borrowed Funds'). Prepayment resulting from donations or offerings made to the Borrower or from the sale of the Property to an unrelated and unaffiliated entity shall not be considered prepayment from Borrowed Funds.

If Borrower makes a full prepayment of the Note with Borrowed Funds (i) within the first twelve (12) months from the date of the Note, there will be a charge of three percent (3%) of the principal balance of the Note as a prepayment charge; (ii) during the 13th month through the 24th month from the date of the Note, there will be a charge of two percent (2%) of the principal balance of the Note as a prepayment charge; (iii) during the 25th month through the 36th month from the date of the Note, there will be a charge of one percent (1%) of the principal balance of the Note as a prepayment charge. If the Borrower makes a full prepayment after the 36th month from the date of the Note, there shall be no prepayment charge, whether or not said repayment is made with Borrowed Funds.

Prepayments shall be applied against the outstanding principal balance of this Note and shall not extend or postpone the due date of any subsequent monthly installments or change the amount of such installments, unless the Lender shall agree otherwise in writing.  Prepayments shall include a payment arising from the acceleration of the Note by the Lender as a result of event(s) of default under the terms of the Loan Documents.

This Note is secured by, and Lender is entitled to the benefits of, the Security Instrument, the UCC-1 Financing Statements and the other Loan Documents (hereinafter defined).   The term **"Security Instrument"** means the Deed of Trust, Assignment of Leases and Rents and Security Agreement dated the date hereof given by Borrower for the use and benefit of Lender covering the estate of Borrower in certain premises as more particularly described therein (which premises, together with all properties, rights, titles, estates and interests now or hereafter securing the debt and/or other obligations of Borrower under the Loan Documents, are collectively referred to herein as the **"Property"**). The term **"Loan Documents"** refers collectively to this Note and the Security Instrument and all other documents executed in connection with this Note or now or hereafter executed by Borrower and/or others and by or in favor of Lender, which wholly or partially secure or guarantee payment of this Note or pertains to indebtedness evidenced by this Note.

A late charge of ten percent (10%) of the amount of the monthly payment as set forth herein (including the final payment due on the Maturity Date), shall be paid to the Lender for any monthly payment not received within ten (10) days of the due date.  For purposes of assessing a late fee, a payment will be considered late unless it is received in federal funds immediately available in the city in which Lender or its agent servicing this loan are located, prior to 11:00 a.m., local time in such city, by the 15th day after the due date.

Should the Borrower default in the payment, as and when due, of the indebtedness evidenced hereby, or should any warranty or representation made by the Borrower hereunder or in any of the Loan Documents prove to be materially false or misleading, or should the Borrower default in the performance of any of the covenants, terms or conditions contained in the Loan Documents, then the entire unpaid principal balance of the indebtedness evidenced hereby, together with all interest accrued but unpaid thereon, and any late fees and other charges and all sums advanced by the Lender to or on behalf of the Borrower under the provisions of the Loan Documents (even though the aggregate of such amounts may exceed the face amount of this Note) shall, at the option of the Lender and without further demand or notice, at once become due and payable and may be collected forthwith regardless of the stipulated date of maturity; and the entire principal amount outstanding shall accrue interest at a "Default Rate" equal to five percent (5.0%) above the Interest Rate being otherwise charged hereunder, as of the first day of the breach, at the option of the Lender, until paid.

It is further agreed that failure of the Lender to exercise this right of accelerating the maturity of the debt, or indulgence granted from time to time, shall in no event be considered as a waiver of such rights of acceleration or estop the Lender from exercising such right.

Time is of the essence of this Note.

Should this Note, or any part of the indebtedness evidenced hereby, be collected by law or through an attorney-at-law, the Lender shall be entitled to collect attorneys' fees and all costs of collection.

Except as otherwise expressly provided in the Security Instrument, no failure to accelerate the debt evidenced hereby by reason of default hereunder, acceptance of a past due installment, or indulgences granted from time to time shall be construed (i) as a novation of this Note or as a reinstatement of the indebtedness evidenced hereby or as a waiver of such right of acceleration or of the right of the Lender thereafter to insist upon strict compliance with the terms of this Note, or (ii) to prevent the exercise of such right of acceleration or any other right granted hereunder or by the laws of the state where the Property is located; and the Borrower hereby expressly waives the benefit of any statute or rule of law or equity now provided, or which may hereafter be provided, which would produce a result contrary to or in conflict with the foregoing. No extension of the time for the payment of this Note or any installment due hereunder, made by agreement with any person now or hereafter liable for the payment of this Note shall operate to release, discharge, modify, change or affect the original liability of the Borrower under this Note, either in whole or in part unless the Lender agrees otherwise in writing.

This Agreement supersedes all prior discussions and agreements between the parties hereto with respect to this transaction and all matters contained herein; and this Agreement contains the sole and entire understanding between the parties hereto. This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

Presentment, notice of demand, notice of protest, notice of payment or non-payment, notice of dishonor, protest, and all other notices are hereby waived by the Borrower, and all sureties, guarantors, and endorsers hereof. The Borrower hereby waives and renounces for itself, its partners, successors and assigns, all rights to the benefits of any statute of limitations and any moratorium, reinstatement, marshalling, forbearance, valuation, stay, extension, redemption, appraisement, exemption and homestead now provided, or which may hereafter be provided by the Constitution and laws of the United States of America and of any state thereof, both as to itself and in and to all of its property, real and personal, against the enforcement and collection of the obligations evidenced by this Note. The

Borrower hereby transfers, conveys and assigns to the Lender a sufficient amount of such homestead or exemption as may be set apart in bankruptcy, to pay this Note in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to the Lender a sufficient amount of property or money set apart as exempt to pay the indebtedness evidenced hereby, or any renewal thereof, and does hereby appoint the Lender the attorney-in-fact for the Borrower to claim any and all homestead exemptions allowed by Law.

This Note is intended as a contract under and shall be construed and enforceable in accordance with the laws of the State of Missouri.

If from any circumstances whatsoever, fulfillment of any provision of this Note or of any other instrument evidencing or securing the indebtedness evidenced hereby, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then, _ipso facto_, the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Note or under any other instrument evidencing or securing the indebtedness evidenced hereby, that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity.

As used herein, the terms "Borrower" and "Lender" shall be deemed to include their respective heirs, successors, legal representatives and assigns, whether by voluntary action of the parties or by operation of law. In the event that more than one person, firm or entity is a Borrower hereunder, then all references to "Borrower" shall be deemed to refer equally to each of said persons, firms, or entities, all of whom shall be jointly and severally liable for all of the obligations of the Borrower hereunder.

ADDITIONAL TERMS: As additional consideration to Lender in making this loan, Borrower agrees to the following conditions:

1.    Borrower agrees to make monthly payments by Automated Clearing House (ACH).

2.    Borrower agrees not to create, incur, assume, or suffer to exist any indebtedness in excess of $25,000.00 during any single fiscal year (including lease obligations), as of the date of this Note, without the prior written consent of Lender.

3.    Borrower agrees to conduct a professionally led Master Plan Capital Campaign through AG Financial Solutions, with the capital campaign starting within six (6) months of closing of this loan.

4.    All building pledge collections received by Borrower shall be forwarded to Lender and shall be applied toward the principal Indebtedness on a monthly basis. Borrower shall provide to Lender monthly capital campaign reports.

Failure to comply with any condition will be considered an Event of Default under the terms of this Note.

**IN WITNESS WHEREOF**, this Note has been duly executed by the undersigned on the date and year first above written.

**BORROWER:**

ZINA CHRISTIAN CENTER, INC.

By: _____
Waymond L. Burton, Jr., President

ATTEST:

_____
Jacquelyn M. Burton, Secretary

ABLE HUMAN SERVICES, INC.

By: _____
Waymond L. Burton, Jr., President

ATTEST:

_____
Jacquelyn M. Burton, Secretary